STEPHEN YAGMAN (SBN 69737)
filing@yagmanlaw.net
(for filings only)
YAGMAN + REICHMANN, LLP
333 Washington Boulevard
Venice Beach, California 90292-5152
(310)452-3200

Presented on behalf of Plaintiff and
Class Representative Chrystal Finley

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| **PEOPLE OF CITY OF LOS ANGELES WHO ARE UN-HOUSED, AS A CLASS REPRESENTED BY C. FINLEY**, *etc.*,<br><br>Plaintiff,<br><br>v.<br><br>**KAREN BASS, EUNISSES HERNANDEZ, PAUL KREKORIAN, BOB BLUMENFIELD, NITHYA RAMAN, KATY YAROSLAVSKY, IMELDA PADILLA, MONICA RODRIGUEZ, MARQUEECE HARRIS-DAWSON, CURREN D. PRICE, JR., HEATHER HUTT, TRACI PARK, JOHN LEE, HUGO SOTO-MARTINEZ, KEVIN de LEON, TIM McOSKER, DOMINIC KIM, MONIQUE CONTRERAS,** and **25 UNKNOWN NAMED DEFENDANTSS,**<br><br>Defendants. | **COMPLAINT**<br><br>(To Prevent City of Los Angeles-Practiced, Negative Eugenics[1] and Fascistic- and Nazi-Like Conduct, Against Poor People, Civil Rights Violations, RICO Violations, and Fraud, and Damages)<br><br>**CLASS ACTION ALLEGATIONS**<br><br>**JURY DEMAND** |

---

[1] Eugenics is the mildest term that could be used to describe defendants' wrongful conduct:  both quasi-ethnic cleansing and quasi-genocide accurately could be used.

1

Plaintiff makes the following allegations, on behalf of plaintiff and of putative class members, in support of the this Complaint, for damages and for declaratory and injunctive relief, and to prevent defendants' continuing, Fascistic- and Nazi-Like wrongful conduct:

## JURISDICTION, VENUE and PARTIES

1. Plaintiff, **C. FINLEY,** asserts federal claims, under 42 U.S.C. § 1983 (civil rights) and 18 U.S.C. § 1961-64 (RICO), against each and all defendants, subject matter jurisdiction lies pursuant to 28 U.S.C. § 1331 of the federal claims, and defendants' conduct affects and interferes with both interstate and intrastate commerce.

2. The matters that are the bases for this action occurred in Los Angeles County, California, and in the City of Los Angeles, and therefore venue lies in the United States District Court for the Central District of California, and in its Western Division, pursuant to 28 U.S.C. § 1391.

3. Defendants are the Los Angeles mayor and city council members, the interim chief of police, a named police officer, and unknown named City officials and police officers.

4. Plaintiff is a member of a class of un-housed persons[2], who live in and stay on the streets, sidewalks, and other public properties in the City of Los Angeles who number about 46,000 within the City of Los Angeles.

---

[2] Federal law defines the terms "homeless" or "homeless individual" or "homeless person" to include:

   **(1)** an individual or family who lacks a fixed, regular, and adequate nighttime residence;
   **(2)** an individual or family with a primary nighttime residence that is a public or private place not designed for or ordinarily used as a regular sleeping accommodation for human beings, including a car, park, abandoned building, bus or train station, airport, or camping ground;

5. Defendants are City of Los Angeles officials and LAPD cops, and each and all are sued in their individual capacities, and, for the claims made under *Monell v. Dep't of Soc. Svcs. of the City of New York*, 436 U.S. 657 (1978), all defendants are sued in their official capacities only.

**(3)** an individual or family living in a supervised publicly or privately operated shelter designated to provide temporary living arrangements (including hotels and motels paid for by Federal, State, or local government programs for low-income individuals or by charitable organizations, congregate shelters, and transitional housing);

**(4)** an individual who resided in a shelter or place not meant for human habitation and who is exiting an institution where he or she temporarily resided;

**(5)** an individual or family who--

**(A)** will imminently lose their housing, including housing they own, rent, or live in without paying rent, are sharing with others, and rooms in hotels or motels not paid for by Federal, State, or local government programs for low-income individuals or by charitable organizations, as evidenced by--

**(i)** a court order resulting from an eviction action that notifies the individual or family that they must leave within 14 days;

**(ii)** the individual or family having a primary nighttime residence that is a room in a hotel or motel and where they lack the resources necessary to reside there for more than 14 days; or

**(iii)** credible evidence indicating that the owner or renter of the housing will not allow the individual or family to stay for more than 14 days, and any oral statement from an individual or family seeking homeless assistance that is found to be credible shall be considered credible evidence for purposes of this clause;

**(B)** has no subsequent residence identified; and

**(C)** lacks the resources or support networks needed to obtain other permanent housing . . . .

42 U.S.C. §11302(a). Plaintiffs and class members are within the definition of this section, and choose to call themselves "un-housed," because "homeless" has become a pejorative term.

3

6.  Defendants and each of them play and played some material role in the acts and/or omissions alleged hereinbelow and in the setting of policies and enforcement of City of Los Angeles ordinances, and/or in the harassment of homeless who live on the streets, and in the takings and stealings of their property, and in the wrongful conduct set forth hereinbelow. No defendant is sued for engaging in legislative conduct.

## ALLEGATIONS COMMON TO EACH COUNT

7.  Each and every allegation set forth in each and every averment herein is incorporated by this reference in each and every other averment and allegation of this pleading.

8.  All acts and/or omissions perpetrated and/or engaged in by each defendant in their individual capacities were done maliciously, callously, oppressively, wantonly, recklessly, with deliberate indifference to the rights allegedly violated, despicably, with evil motive and/or intent, in disregard of the rights of plaintiffs and class members, and in clear violation of the federal Constitution and of the California Constitution, and of controlling federal law, both statutory and common law, as set forth by both the United States Supreme Court and the United States Court of Appeals for the Ninth Circuit.

9.-11. Reserved.

12.  The Eighth and Fourteenth Amendments to the United States Constitution prohibit the threatening of and/or imposition of penalties for merely being on, including sitting, sleeping, lying, or parking vehicles on public property, for homeless individuals who cannot obtain permanent shelter. The Fourth Amendment prohibits the seizures of unhoused persons' property.

13.  Sitting, lying, and sleeping are defined as acts or conditions, that are universal and unavoidable consequences of "being human," as is parking a vehicle

4

that is one's only means of "housing" on a public street. Homeless persons' ownership of their property also is a consequence of being human.

14. Governments and their officials and employees may not criminalize the state of being "homeless in public places," and government may not "criminalize conduct that is an unavoidable consequence of being homeless -- namely sitting, lying, or sleeping on the streets," or owning property, including shelter, while existing on the streets.

15. So long as there is a greater number of homeless individuals in the City of Los Angeles than the number of available beds in its shelters, which has for many years been, and presently is, the case, the City of Los Angeles and defendants mayor, council members, and police cannot threaten, extort, penalize, or prohibit, or threaten or attempt to do so, unhoused individuals, for involuntarily being in, sitting, lying, and sleeping on public property, or confiscating their property.

16. The City official defendants have been told this over, and over, and over, for at least 15 years, since 2006, in *Jones v. City of Los Angeles*, 444 F.3d 118 (9th Cir. 2006), and again in 2014, in *Desertrain v. City of Los Angeles*, 754 F.3d 1147 (9th Cir. 2014), and yet again in 2019, in *Martin v. City of Boise*, 920 F.3d 584, 604 (9th Cir. 2019), all of whose contents are incorporated herein, and in which in *Martin* the City of Los Angeles petitioned the United States Supreme Court for a writ of certiorari, which was denied, and which Feuer contended was done so that the Court could "clarify"[3] the Ninth Circuit's ruling, but none of these

---

[3] There is a press posting on Feuer's official City website, in which it is stated that "LA is asking the Supreme Court to *clarify* the extent of the City's authority with respect to the conduct of homeless residents who dwell on its streets." (Emphasis added.) Feuer stated that the *Martin* case's "rationale sweeps too broadly, and the opinion is internally inconsistent and unclear[,] [and] leaves jurisdictions like Los Angeles without the certainty necessary to balance intensely competing interests without risking costly and time-consuming litigation." The Court denied the

precedential rulings, all of which were and are binding on the City and all of its officials and employees, has had any effect on the officials' wrongful behavior. They are incessant and incorrigible when it comes to harassing the un-housed.

17.  As long as there is no option of sleeping indoors, the City government and defendants may not criminalize indigent, homeless people for being outdoors, on City streets, sleeping outdoors, on public property, based on the false premise they these human beings had any choice in the matter.

18.  Resisting the need to be somewhere, to eat, to sleep, or to engage in other life-sustaining activities is impossible. Avoiding public places when engaging in these otherwise innocent conducts is impossible: as long as the unhoused plaintiffs and class members do not have a place where they can lawfully be, the challenged ordinances, as applied to them, effectively punish them for something for which they may not be convicted under the Eighth Amendment, and hence, the Fourteenth Amendment, to wit, being, sitting, lying down, sleeping, eating, parking their vehicles, and other innocent conduct, so that the challenged ordinances, both on their faces and as applied against the homeless, are unconstitutional.

19.  The use of ordinances, such as Los Angeles Municipal Code § 41.18 criminalizes the simple acts of being outside on public property, when one has nowhere else she or he can be, and penalizes the condition of being a human being, and, in that sense, are prohibited status crimes.

20.  A municipality and its officials may not lawfully or constitutionally criminalize such behavior, consistently with the Eighth Amendment, and hence the

---

certiorari petition.  Yet, *Martin* is not unclear, did not need "clarification," and now here we are with costly and time-consuming litigation, only because defendants, led by Feuer, simply and flatly refuse to comply with *Martin*'s dictates. Feuer and defendants lost, but like former President Trump, they continue to refuse to acknowledge that loss.

Fourteenth Amendment, when no sleeping spaces are practically available in a
sufficient number of places and/or shelters.

21. So long as there is a greater number of homeless individuals in the City
of Los Angeles than the number of available beds in shelters, for the unhoused,
City of Los Angeles and defendants may not legally enforce ordinances against
unhoused individuals, for being, sitting, lying, and/or sleeping in any public place.

22. Ordinances violate the Eighth Amendment, and hence the Fourteenth
Amendment, insofar as they impose criminal sanctions against unhoused
individuals, for being and/or lying down and/or sleeping outdoors, on public
property, when no alternative shelter is available to them. *Martin* clearly and
unequivocally states this, and it is binding on all defendants, who refuse to obey it,
yet it is the law.

23. Defendants' so-called "Zone" ordinances, see below, which provide for
virtually perpetual street and sidewalk cleanings clearly are pretextual, in that they
create the false appearance that their function is cleaning, when in fact and in
reality they serve as a fictitious means for defendants to rid the City's streets and
sidewalks of the unhoused, and to confiscate their property, as a means to just
make them go away or disappear: the higher-up defendants use the Sanitation
Department workers to clear away the unhoused's belongings, similarly to the way
the Nazis used Jewish people as straw bosses[4] in the Nazi concentration and
extermination camps, and the LAPD defendants, enforce this by "standing guard,"
like Heinrich Himmler's[5] *Geheime Staatspolizei* (the Gestapo) while the Sanitation

---

[4] A worker who has some responsibility, but little authority.

[5] The head of the *Schutzstaffel* (German for "Protection Squads," or "Protection
Echelon," the "SS," self-described political soldiers) and the Third Reich's chief of
police, from 1936 until his dismissal on May 6, 1945, just 17 days before his

workers confiscate and steal the unhoused's property, taking it far away for "storage," to a place that the unhoused cannot reasonably reach, and then the property is thrown out. This is the principal means by which defendants attempt to rid the City of the unhoused, making it impossible for them to exist at all, with no tents for shelter, no sleeping gear, and often no personal belongings at all.  It is inhumane and it is horrible, and it is insane.

25.  All of these actions by defendants were and done intentionally, in concert, they are coordinated, conspiratorially, and were both attempts to do and the doing of things that constitute fraud, extortion under both state and federal law, and which obstruct justice, all as set forth more fully herein.

26.  Defendants' actions are a form of government-sanctioned eugenics[6], to alter, by government edict -- here, "Zone" ordinances, a specific population that is disfavored by society and by government.

27.  In general, eugenics is the practice of arranging a human population to increase or to decrease the occurrence of characteristics regarded as desirable or undesirable.  Here, poverty -- the state of being poor -- is regarded by defendants as being an undesirable characteristic, and defendants' wrongful conduct as alleged herein is designed to decrease the visible manifestations and occurrences

---

suicide on May 23, 1945, as a British prisoner, at an interrogation camp near Lüneberg, Germany.

[6] "Eugenics" (/juːˈdʒɛnɪks/ *yoo-JEN-iks*; from Greek εὐ- "good" and γενής "come into being, growing") is a set of beliefs and practices that aim to improve the genetic quality of a human population, historically, and here, by excluding people and and/or groups of people judged to be inferior, or promoting those judged to be superior.  In recent years, the term has seen a revival in bioethical discussions, on the usage of new technologies, such as CRISPR (a gene therapy technique) and genetic screening, with a heated debate on whether these technologies should be called eugenics or not.

of this characteristic in public places. It is akin to the Nazis' and the *Geheime Staatspolizei*'s treatment of the Romani population, and the same treatment of the Romani (colloquially known as "Roma") by many countries in modern-day Europe.

28.  The American eugenics movement was formed during the late Nineteenth Century and continued as late as the 1940s, and to a much lesser extent into the late 20th Century.[7]  (Negative eugenics did not originate with the Nazis, as commonly is believed to the case: rather, the Nazis got it from the Americans.) The American eugenics movement embraced negative eugenics, as a purported method of improving the human race, and was increasingly discredited as unscientific and racially-biased during the 20th Century, especially after the adoption of its doctrines by the Nazis (in order to justify their treatment of Jews, Romani, disabled people, and other minority groups).  Incredibly, eugenics was *not* invented by the Nazis, but rather was first employed by "scientists" in New York, principally Charles Benedict Davenport, a Brooklyn-born, Harvard biology professor, and anti-miscegenistic, who believed that race determined behavior. That is, the Nazis got eugenics from the Americans.  It is important to recognize

---

[7]  Many Americans, especially those born after the WWII, Baby Boomers, and post-Baby Boomer generations, incorrectly believe that Stanford Univ. Professor William Bradford Shockley, Jr. was the father of eugenics.  He was not.  In the 1970s, Shockley contended that a higher rate of reproduction among the less intelligent was having a dysgenic effect, and that a drop in average intelligence would ultimately lead to a decline in civilization. He also claimed that blacks were genetically inferior to whites on an intellectual level -- a view held by the National Football League until June 2021, as a means for denying brain-damaged, Black former players equal compensation to White players in the brain damage class action settlement.  (Shockley was a candidate for the Republican nomination in the 1982 United States Senate election in California.  He ran on a single-issue platform of highlighting the "dysgenic threat" of some racial groups, including African-Americans, to American society.)

that, in America, eugenics was and is a movement used to reduce an undesired population -- as defendants here use their City of Los Angeles, subject ordinances to push racist, classist, and ableist ideals, rather than a movement that explicitly worked toward the improvement of the human race, against unhoused persons, who are "an undesired population."  *See also*, involuntary sterilization, lobotomization, and William Sheldon's somatotyping, all also conceived and pioneered in America.  The English-language term "eugenics" translates to "well-born," from the Greek word, "*eugenes*."  Eugenics reinforces the prejudices of the time by deeming those with desirable genetic traits such as White, of higher economic status, and healthy, when, on the other hand, those with undesirable traits are identified as non-White, of lower economic status, or  physically or mentally disabled.

29.  Defendants are practicing modern-day eugenics against plaintiffs and class members.  *See also LA Alliance for Human Rights v. City of Los Angeles*, 2:20-cv-02291-DOC-(KESx), Doc. 227 (04/20/21).

30.  Plaintiff and class members un-housed persons who live in the streets of Los Angeles, on sidewalks and elsewhere, who are subject to at least two additional, "Zone," unconstitutional ordinances.

31. These ordinances are colloquially known as "Zone" ordinances because they establish zones from which the unhoused are sought to be and are expelled.

32. Under the pretenses of "Health Hazard Removal" and "Comprehensive Street & Sidewalk Cleaning," the ordinances thinly-veiled purpose and effect is to get un-housed persons off the streets and sidewalks of the City of Los Angeles, and out of sight.

33. They dictate "Zone Boundaries," displayed as maps, and then dictate that in those zones there will be "Health Hazard Removal" on "Monday, Tuesday, Wednesday, & Friday," during which times City employees from the Sanitation

Bureau, backed-up with muscle by LAPD officers, like defendant Contreras, remove un-housed persons' belongings, including tents, sleeping gear, and other personal items, and that, on "Every Thursday, Between 7 am and 3pm" "During comprehensive cleaning no one will be allowed to remain on a sidewalk."  Thus, under this type of ordinance, from Mondays through Fridays, City officials, sanitation workers, and cops manage to keep all un-housed persons of the sidewalks and streets, and those who remain have all of their belongings stolen by the City and its employees.

34. Truly amazingly, as to any of these Zones that are not in Downtown Los Angeles, an un-housed person would have to travel to a City-operated facility with the Orwellian name of "The Bin," located at 507 Towne Avenue, in zip code 90013, so that the un-housed in Venice Beach, of whom plaintiff Finley is one, would need to travel somehow to "The Bin" to retrieve literally all of her belongings, that were stolen from her in Venice Beach on May 7, 2024, at noon, by defendant Contreras and other LAPD officers.  Plaintiff Finley never will be able to get back any her belongings and she has been forced to exist and to sleep at night unsheltered.

35. Defendants Contreras and other LAPD officers oversaw and enforced the theft of  Finley's property.

36. This same theft of property similarly was visited on plaintiffs Jacobs and Serin in action 2:22-08010-DOC(KESx), and this shows a custom of such thefts.

37. On Oct. 21, 2021, at approximately 7:30 a.m., Mr. Jacobs was sitting in front of the tent in which he had slept, when a "waste team" confronted him, backed up by about 10 LAPD officers, including defendant LAPD officers Contreras, who was in charge of the LAPD contingent, Garcia, and Derek Jacobs, ordered him to remove his belongings from the sidewalk, which he put in the street pursuant to their commands, they then put a yellow tape cordon around his

belongings, threw his belongings on the sidewalk, and confiscated them, telling him that he could retrieve them at the "Bin," at 507 Towne Avenue, Los Angeles 90013, over 17 miles away, in downtown Los Angeles.  The belongings stolen from him included his clothing, his wallet, his bank cards, several hundred dollars in cash, and a container, which were all of his belongings.

38. Plaintiff Jacobs has to make a cardboard box shelter in which he had to live, and to sleep on the evenings of Oct. 21-23, after Sanitation workers stole his tent, over which theft defendant Contreras and other LAPD thugs presided, and that shelter, taken on Oct. 24.

39. There are Special Enforcement and Cleaning Zone signs near plaintiff 's place of habitation.

40. There is an LAPD so-called "Pacific Area Senior Lead Officer Basic Car Map," on which defendants Contreras, Ramirez, Acosta, and Castaneda are depicted.

41. On many occasions within the past year, Mr. Serin's belongings have been stolen by Sanitation workers backed-up by LAPD muscle, under the guise of a clean-up, and he presently is unable to identify the workers or the LAPD officers, and never has been able to recover his belongings.

42. Plaintiff Finley is Black.

43. All of the cops who participate, Acosta, Caloza, Contreras, Ramirez, Castaneda, Unknown Garcia, Aura Garcia, Ramirez, Romero, and Villegas all are Hispanic/Latino/a.

44. It is alleged on information and belief that the Hispanic/Latino/a defendants acted against the Black plaintiffs as a consequence of Hispanic/Latino/a negative animus toward Blacks, and the Hispanic/Latino/a population of the City of Los Angeles outnumbers both the White and Black populations of the City of Los Angeles.

45. All of the LAPD defendants, who ratified, condoned, approved of, and acquiesced in Contreras' and her subalterns' and her factotums' unconstitutional conduct toward plaintiff are Hispanic/Latino/a, and it is alleged that their treatment of plaintiff was motivated by invidious race hatred. Contreras previously engaged in harassing behavior toward plaintiff Finley.

46. Judge Carter's Nov. 19, 2021 minute order in *People of the City of Los Angeles Who Are Un-Housed v. Garcetti*, 2:21-cv-06003, and all of its contents, Doc. 103, hereby is incorporated herein by this reference.

47.-99. Reserved.

## COUNT 1
### (Fourteenth Amendment, Equal Protection Violations, against all defendants, in both their individual and official capacities, 42 U.S.C. § 1983)

100. The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution prohibits state action that discriminates against a suspect class of persons, and makes a state governmental unit responsible for the equal protection of its citizens, and provides that "nor shall any state . . . deny to any person within its jurisdiction the equal protection of the laws.

100a. The Equal Protection Clause contains the right of the people to be exempt from unfriendly legislation, exemption from legal discriminations that imply an inferiority in civil society, and which lessen the enjoyment of rights which others enjoy.

100b. Defendants' subject ordinances violated plaintiffs' and class members' right to equal protection of the laws because it is legislation that is unfriendly to them, since it is aimed only at them and at no other class of persons, it subjects only them to legal discrimination -- indeed, it cannot be contested that it is only them against whom it discriminated, it implies their inferiority in civil society, and it lessens their enjoyment of rights which other human beings enjoy.

**COUNT 2**

**(*Monell* Violations, against all defendants, in their official capacities, 42 U.S.C. § 1983)**

101.  Defendants' wrongful conduct under of color of law occurred so that each defendant knowingly, grossly negligently, recklessly, and with deliberate indifference to the rights allegedly violated, caused to come into being, maintained, fostered, condoned, approved of, either before the fact or after the fact, ratified, and/or took no action to correct, an official policy, practice, procedure, or custom of permitting the occurrence of the categories of wrongs set forth in the immediately-preceding Count, and/or improperly, inadequately, with deliberate indifference to the constitutional or other federal rights of persons, grossly negligently, with reckless disregard to constitutional or other federal rights, failed properly to train, to supervise, to retrain, if necessary, to monitor, or to take corrective action with respect to themselves and/or their personnel with respect to the types of wrongful conduct alleged in this pleading, so that each one of them is legally responsible for all of the injuries and/or damages sustained by plaintiffs' and class members, pursuant to the principles set forth in *Monell v. Dep't of Social Services* and its progeny.

**COUNT 3**

**(Fourteenth Amendment, Due Process Violations, against all defendants, in both their individual and official capacities, 42 U.S.C. § 1983)**

103.  The Due Process Clause of the U.S. Constitution provides "nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ."

103a.  The defendants' behavior alleged herein is so egregious, so outrageous, that it fairly may be described as shocking to the conscience, and also it is arbitrary and capricious action by the government: it is an exercise of power without any reasonable justification or legitimate governmental purpose:  plain

and simple, it is government bullying of those who are least able to defend themselves; it violates the decencies of civilized conduct in a civilized society; it is brutal and offensive, and it does not comport with basic concepts of fair play and decency, so that it violates plaintiffs' and class members' substantive due process rights, because it is the government using its vast power arbitrarily and oppressively. It deprives plaintiffs and class members of property without due process of law, both procedurally and substantively.

### COUNT 5
### (*Monell* Violations, against all defendants, against all defendants, in their official capacities 42 U.S.C. § 1983)

104. Defendants' wrongful conduct under of color of law occurred so that each defendant knowingly, grossly negligently, recklessly, and with deliberate indifference to the rights allegedly violated, caused to come into being, maintained, fostered, condoned, approved of, either before the fact or after the fact, ratified, and/or took no action to correct, an official policy, practice, procedure, or custom of permitting the occurrence of the categories of wrongs set forth in the immediately-preceding Count, and/or improperly, inadequately, with deliberate indifference to the constitutional or other federal rights of persons, grossly negligently, with reckless disregard to constitutional or other federal rights, failed properly to train, to supervise, to retrain, if necessary, to monitor, or to take corrective action with respect to themselves and/or their personnel with respect to the types of wrongful conduct alleged in this pleading, so that each one of them is legally responsible for all of the injuries and/or damages sustained by plaintiffs' and class members, pursuant to the principles set forth in *Monell v. Dep't of Social Services* and its progeny.

//
//
//

## COUNT 6
(**Conspiracy**, **against all defendants, in both their individual and official capacities, 42 U.S.C. § 1983**)

105. All defendants and each of them understood and agreed that they all would act in combination in the manners described hereinabove and then overt acts were undertaken to carry out their schemes, both hereinabove and hereinbelow.

## COUNT 7
(**Fourteenth Amendment, Privileges and Immunities Abridgement Violations, against all defendants, in both their individual and official capacities, 42 U.S.C. § 1983**)

106.  The Privileges and Immunities Clause of the Fourteenth Amendment provides that "No State shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States."

106a.  California Welfare & Institutions Code §  17000 provides that

> every city . . . shall relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein . . . .

106b.  This state law provides the substance of a privilege and immunity enjoyed under state law to plaintiffs' and class members, and defendants' conduct violates plaintiff's and class members' Fourteenth Amendment privileges and immunities rights (and this as well violates plaintiffs' and class members' rights to both equal protection and to due process).

106c. Plaintiff Finley is a citizen of Texas and plaintiff Jacobs is a citizen of New York.

## COUNT 8
(*Monell* **Violations, against all defendants, in their official capacities, 42 U.S.C. § 1983**)

107.  Defendants' wrongful conduct under of color of law occurred

16

so that each defendant knowingly, grossly negligently, recklessly, and with deliberate indifference to the rights allegedly violated, caused to come into being, maintained, fostered, condoned, approved of, either before the fact or after the fact, ratified, and/or took no action to correct, an official policy, practice, procedure, or custom of permitting the occurrence of the categories of wrongs set forth in the immediately-preceding Count, and/or improperly, inadequately, with deliberate indifference to the constitutional or other federal rights of persons, grossly negligently, with reckless disregard to constitutional or other federal rights, failed properly to train, to supervise, to retrain, if necessary, to monitor, or to take corrective action with respect to themselves and/or their personnel with respect to the types of wrongful conduct alleged in this pleading, so that each one of them is legally responsible for all of the injuries and/or damages sustained by plaintiffs and class members, pursuant to the principles set forth in *Monell v. Dep't of Social Services* and its progeny.

## COUNT 9
### (**Conspiracy, against all defendants, in both their individual and official capacities, 42 U.S.C. § 1983**)

108. All defendants and each of them understood and agreed that they all would act in combination in the manners described hereinabove and then overt acts were undertaken to carry out their schemes, both hereinabove and hereinbelow.

## COUNT 10
### (**Eighth Amendment, Cruel and Unusual Punishments Infliction Violations, against all defendants in both their individual and official capacities, 42 U.S.C. § 1983**)

109.  The Eighth Amendment Cruel and Unusual Punishment Clause provides that "nor cruel and unusual punishments [may be] inflicted."

109a.  The Eighth Amendment's Cruel and Unusual Punishment Clause prohibits the imposition, or threat to impose, penalties for sitting, or lying outside,

or parking a motor vehicle on a public street, by unhoused persons who cannot obtain shelter, and whether these activities are defined as acts or conditions, they are inseparable from status, they are universal and unavoidable consequences of being human -- they are one and the same thing, and are involuntary conduct that is inseparable from status, because human beings are biologically compelled to rest, whether by sitting, lying, or sleeping, and all of these things must occur some place, here in on sidewalks, on streets, and in vehicles that are banned by the subject ordinances.

109b.  The state may City of Los Angeles may not criminalize and/or punish, threaten to punish, or attempt to punish the state of being unhoused in public places, nor may it criminalize conduct that is an unavoidable consequence of being unhoused.

109c.  As long as there is no option of sleeping indoors, defendants may not criminalize indigent, unhoused persons for being outdoors, on public property, like streets, on the false premise that that they had a choice in the matter.

109d.  Resisting the need to eat, sleep, or engage in other life-sustaining activities, or parking one's motor vehicle in order to be able to do these things, is impossible.

109e.  Avoiding public streets when engaging in this otherwise innocent behavior also is impossible.

109f.  Unhoused persons who must sleep in their vehicles may not be punished, without the punishment being cruel and unusual, because such persons may not be convicted under the Eighth Amendment for innocent conduct.

109g. Prohibiting or interfering with sleeping in a public place as applied to unhoused persons is unconstitutional, as is the taking away of their property and/or housing.

109h.  Here, defendants' application of their ordinances criminalizes conduct that is not criminal, and thus is unconstitutional.

109i.  Ordinances that make the use of public property as a temporary or permanent place of dwelling, lodging, or residence, for storage of personal belongings, for cooking, or using temporary structures -- such as tents, or as a living accommodation, or any of these activities in combination with one another, are unconstitutional.

109j.  The subject ordinances are aimed only at unhoused persons who reside in the streets or on sidewalks, and, as such are unconstitutional.

109k. The false flag Zone ordinances that are disguised as ordinances that facilitate street and sidewalk cleanings, in fact are aimed and purposed at something altogether different, to wit, to get rid of un-housed people, and, as such, are unconstitutional.

## COUNT 11
### (*Monell* Violations, against all defendants, in their official capacities, 42 U.S.C. § 1983)

110.  Defendants' wrongful conduct under of color of law occurred so that each defendant knowingly, grossly negligently, recklessly, and with deliberate indifference to the rights allegedly violated, caused to come into being, maintained, fostered, condoned, approved of, either before the fact or after the fact, ratified, and/or took no action to correct, an official policy, practice, procedure, or custom of permitting the occurrence of the categories of wrongs set forth in the immediately-preceding Count, and/or improperly, inadequately, with deliberate indifference to the constitutional or other federal rights of persons, grossly negligently, with reckless disregard to constitutional or other federal rights, failed properly to train, to supervise, to retrain, if necessary, to monitor, or to take corrective action with respect to themselves and/or their personnel with respect to the types of wrongful conduct alleged in this pleading, so that each one

of them is legally responsible for all of the injuries and/or damages sustained by plaintiffs' and class members, pursuant to the principles set forth in *Monell v. Dep't of Social Services* and its progeny.

## COUNT 12
### (**Conspiracy, against all defendants, in their official capacities, 42 U.S.C. § 1983**)

111. All defendants and each of them understood and agreed that they all would act in combination in the manners described hereinabove and then overt acts were undertaken to carry out their schemes, both hereinabove and hereinbelow.

## COUNT 13
### (**Eighth Amendment, Excessive Fines Imposition Violations, against all defendants in both their individual and official capacities, 42 U.S.C. § 1983**)

112. The Eighth Amendments' Excessive Fines Clause provides that "nor shall excessive fines [be] imposed."

112a. A fine is "excessive" if it is not proportional to and related to the gravity of the offense that it is designed to punish.

112b. The factors to be considered are the nature and extent of the underlying offense (none), whether the underlying offense is related to other illegal activities (none), whether other penalties may be imposed for the offense (none), and the extent of the harm caused by the offense (none). Here, defendants created and enforce ordinances to keep rich, habitated folks, who don't want to be bothered by seeing poor, unhoused folks who are forced to live on the sidewalks and streets and in vehicles, and none of the four, evaluative factors is applicable, so that the subject ordinances' and their enforcement -- by confiscating and stealing unhoused persons' property and by towing away an offending vehicle, and thus depriving a poor person or her or his home, is Fascistic and Nazi-esque, unfounded, draconian, and unconstitutional.

112c.  The horror of a rich person having to endure seeing a poor person at all or a poor person's camper or RV, or, indeed, the actual poor person, is not a legitimate reason for enforcement of the subject ordinances.  It is an ugly, neighborhood beautification project.

113d. Defendants' wrongful conduct, as set forth hereinabove is in violation of the Ninth Circuit's decision in *Pimentel v. City of Los Angeles*, 974 F.3d 917 (9th Cir. 2020) (Eighth Amendment's Excessive Fines Clause applies to municipal parking fines, notwithstanding that California changed its categorization of parking fines from criminal penalties to civil penalties), *as amended on denial of reh'g and reh'g en banc*, in which two of the City defendants' defense counsel herein, defendant Feuer and Gabriel Dermer, lost in the Ninth Circuit.

## COUNT 14
### (*Monell* Violations, against all defendants, in their official capacities, 42 U.S.C. § 1983)

113.  Defendants' wrongful conduct under of color of law occurred so that each defendant knowingly, grossly negligently, recklessly, and with deliberate indifference to the rights allegedly violated, caused to come into being, maintained, fostered, condoned, approved of, either before the fact or after the fact, ratified, and/or took no action to correct, an official policy, practice, procedure, or custom of permitting the occurrence of the categories of wrongs set forth in the immediately-preceding Count, and/or improperly, inadequately, with deliberate indifference to the constitutional or other federal rights of persons, grossly negligently, with reckless disregard to constitutional or other federal rights, failed properly to train, to supervise, to retrain, if necessary, to monitor, or to take corrective action with respect to themselves and/or their personnel with respect to the types of wrongful conduct alleged in this pleading, so that each one of them is legally responsible for all of the injuries and/or damages sustained by

plaintiffs' and class members, pursuant to the principles set forth in *Monell v. Dep't of Social Services* and its progeny.

### COUNT 15
### (**Conspiracy, against all defendants, in their official capacities, 42 U.S.C. § 1983**)

114. All defendants and each of them understood and agreed that they all would act in combination in the manners described hereinabove and then overt acts were undertaken to carry out their schemes, both hereinabove and hereinbelow.

118.-141.  Reserved.

### COUNT 16
### (**Racketeer Influenced and Corrupt Organizations, RICO, for Fraud, Extortion, Under Both State and Federal Law, and Obstruction of Justice, against all defendants in both their individual and official capacities**)

142.  By doing the things alleged hereinabove, and/or aiding or abetting them, defendants thereby engaged in and committed the related RICO predicate acts, with similar purposes, results, participants, victims, and methods of commission, over a long and continuing period of time, with a threat of continued racketeering activity, of fraud, extortion, under both state and federal law, and obstruction of justice, and continue to commit fraud, extortion, under both state and federal law, and obstruction of justice, all by using instrumentalities of interstate commerce to accomplish their crimes, and thereby are liable under the civil RICO statute, as set forth hereinbelow.

### Rico Predicate Acts

143.  **Frauds**

**A.  Extortion**  The extortion occurred as follows:  defendants, through their behaviors have threatened plaintiff and class members that were they to exist as un-housed persons in the City of Los Angeles all of their property and belongings

22

would be confiscated and stolen, so that because of this extortionate threat, plaintiff and class members have been extorted not to be on the streets.

**B. Extortion**  The extortion occurred as follows:  the City of Los Angeles defendants, through the illegal placement of Zone ordinance placards, have threatened plaintiffs and class members that were they to remain on sidewalks, that their belongings would be confiscated and that penalties would be imposed on them, and that their belongings would be forfeited, so that because of this extortionate threat, plaintiff and class members have been extorted not to inhabit sidewalks in contravention of the warning on the Zone ordinance signs.

145.  **Obstruction of Justice**  The obstruction of justice occurred by defendants preventing plaintiff and class members from exercising their federal constitutional rights, all as set forth hereinabove.

146.  Each defendant, in his/her own right, and all defendants together, collectively, as well as their employees, who work in and for the City of Los Angeles, are all enterprises and associated-in-fact enterprises, within the meaning of 18 U.S.C. 1961(4), and therefore are RICO enterprises.

147. All of the LAPD defendants are a separate enterprise, like a true mafia, extortion/protection racket-enterprise.

148. Each and all of defendants' activities affect interstate commerce, as well as intrastate and interstate-travel.

149.  Each defendant received and receives income, directly and/or indirectly, by way of insurance premiums, salary, compensation, reimbursement for expenses, *per diem* costs reimbursements, meals, lodging, and/or travel, pensions, *etc.*, from the pattern of racketeering activity alleged herein, and used and uses that income in the acquisition of an interest in and/or operation of the enterprise, in violation of 18 U.S.C. 1962(a), and acquired and/or maintained

control over said racketeering enterprise through a pattern of racketeering activities, as set forth herein, in violation of 18 U.S.C. 1962(b).

150. Defendants conducted and/or participated, and continue to conduct and participate in, said enterprises' affairs through a pattern of racketeering activities, in violation of 18 U.S.C. 1962(c).

151. The pattern of racketeering activities included, and continues to include, a continuous pattern and practice potentially involving activities, including the RICO predicates of fraud, extortion, mail fraud, wire fraud, fraudulent concealment, and obstruction of justice, and defendants' defense of the instant action is and will continue to be and will be a continuation and a part of its RICO schemes, so that those who may participate in the defense of this action may make themselves liable under RICO.

152. Defendants' associated-in-fact enterprises constitute a present and continuing threat of harm and additional RICO violations.

153. The enterprises' activities have occurred on more than one, and on many thousands of occasions, over at least the past 35 years and have been done on numerous occasions and constitute at least a thousand separate acts, as set forth hereinabove, not including the acts that will be included as part of the defense of the instant action.

154. At least five thousand RICO predicate acts have occurred.

155. The wrongful acts described in the matters enumerated hereinabove occurred over a significant period of time, and are related in that they evidence civil RICO predicates, including at least fraud, wire fraud, mail fraud, extortion, and obstruction of justice, and they pose a threat of continued criminal activity, have the same or similar purposes, results, participants and kinds and categories of participants, victims, methods of commission, and are otherwise interrelated by their common characteristics and participants, they are not isolated events, but are

both continuous and systemic, and each and all constitute a continuing pattern of racketeering activity and constitute a long term threat of continuing racketeering activity.

156. The activities led to defendants' control of and acquisition over the enterprises and resulted in the injuries to plaintiffs and class members business and/or property, as alleged herein, which resulted from defendants' participation in and control of the enterprises.

157. By failing to prevent the wrongful conduct herein alleged, misconduct that amounted to racketeering activities, all managerial and non-managerial employees and/or officers and/or agents of defendants engaged in and condoned racketeering activities.

158. The willful and/or negligent mismanagement of the enterprises, with knowledge by defendants charged with management, and potentially other defendants, that they were and continue to be operated as a RICO enterprises, directly caused the harm to plaintiffs, as alleged herein.

159. The enterprises are RICO enterprises because they have hierarchical structures and consensual structures for making decisions, and those structures have an existence beyond that which is necessary to commit the RICO predicate acts alleged herein, in that the hierarchical and consensual structures exist to accomplish doing business, and the structures for decision-making exist separate and apart from the racketeering activities.

160. Each defendant unlawfully conspired with others, including other defendants, by understanding and agreeing to do and taking overt actions to support the matters hereinabove alleged, to violate the provisions of 18 U.S.C. 1962(b), (c), and (d), and, on information and belief, continued and continue to do so with the aid and assistance of co-conspirators

161.  Defendants' actions involve many thousands of City of Los Angeles unhoused residents and constitute a pattern of racketeering activity and the predicate acts as set forth hereinabove.

162. Defendants' actions have taken and thereby injured plaintiffs Serin's and Jacobs' property.

162.-206.  Reserved.

## COUNT 17
### (Fourth Amendment Violations Under § 1983, Against All Defendants In Both Their Individual And Official Capacities)

207. Plaintiffs incorporate herein all of the material in the court's Nov. 11, 2021 minute order and, based thereon and on the allegations set forth hereinabove, allege that defendants violated all plaintiffs' Fourth Amendment rights, and by virtue thereof, are liable to plaintiffs for both injunctive relief and in damages.

## COUNT 18
### (*Monell* Violations, against all defendants, in their official capacities, 42 U.S.C. § 1983)

208.  Defendants' wrongful conduct under of color of law occurred so that each defendant knowingly, grossly negligently, recklessly, and with deliberate indifference to the rights allegedly violated, caused to come into being, maintained, fostered, condoned, approved of, either before the fact or after the fact, ratified, and/or took no action to correct, an official policy, practice, procedure, or custom of permitting the occurrence of the categories of wrongs set forth in the immediately-preceding Count, and/or improperly, inadequately, with deliberate indifference to the constitutional or other federal rights of persons, grossly negligently, with reckless disregard to constitutional or other federal rights, failed properly to train, to supervise, to retrain, if necessary, to monitor, or to take corrective action with respect to themselves and/or their personnel with respect to the types of wrongful conduct alleged in this pleading, so that each one

of them is legally responsible for all of the injuries and/or damages sustained by plaintiffs and class members, pursuant to the principles set forth in *Monell v. Dep't of Social Services* and its progeny.

## COUNT 19
### (**Conspiracy, against all defendants, in both their individual and official capacities, 42 U.S.C. § 1983**)

209. All defendants and each of them understood and agreed that they all would act in combination in the manners described hereinabove and then overt acts were undertaken to carry out their schemes, both hereinabove and hereinbelow.

210.-272.  Reserved.

## CLASS ACTION ALLEGATIONS

273.  Plaintiff is a member of a class whose defining characteristics are that they are un-housed persons who live in the streets and on the sidewalks of the City of Los Angeles.

274. The class contains about 45,000 people and is so numerous so that joinder of all members is impracticable.

275. There are only common questions of fact and of law with respect to all class members of the class, and whose members are in imminent jeopardy of being ousted from their habitations on the streets of Los Angeles and their belongings, shelters, and property being stolen and/or taken away, to a place they physically are unable to reach, possibly to reclaim it.

276.  The claims made by the representative party, the plaintiff, are typical of the claims of the class.

277.  The representative of the class, plaintiff, more than fairly, vigorously, and zealously will represent and adequately protect the interests of all class members, both themselves and through their zealous attorney.

278.  Prosecution of separate actions by individual class members would create a risk of inconsistent and/or varying adjudications with respect to class members, which would establish incompatible standards for parties opposing the classes, and defendants have acted and will continue to act on grounds generally applicable to every class member in both classes, and the class questions not only predominate but are the only questions that exist, and this action is the far superior manner to other available methods for fairly and efficiently adjudicating the controversies.

279.  Specifically, the class members' interests in individually controlling the prosecution or defense in separate actions do not exist, and there are no anticipated difficulties in managing this class action, especially as to identification of the amount of damages, identification of class members, and providing actual notice to virtually all class members.

280.  Therefore, this action is maintainable under F.R. Civ. P. Rule 23(a), & 23(b)(1)(A), & (B)(1), & (2), and & (3).

281.  Although there would appear to be no notice requirement, the nature of the notice to be provided to class members who live in vehicles would be that the offensive placards would be taken down, and would be decided by the court.

**WHEREFORE**, plaintiffs and class members request relief against each defendant as follows:

1.  Compensatory damages for all non-RICO violations, in sums in excess of $75,000.00, exclusive of costs and interest;

2.  Punitive damages, in a sum to be determined by a jury, and as a percentage of the net worth of each defendant, in a sum sufficient to deter future misconduct, and not less than $1,000,000.00 per defendant;

3.  Damages for the RICO violations, and trebling of them;

4.  Injunctive relief, according to law;

5. The costs of action and interest;

6. Attorneys' fees; and,

7. Such other relief as is just and proper.

**JURY DEMAND**

Plaintiff demands trial by jury of all issues.

**YAGMAN + REICHMANN, LLP**

By:  /s/  Stephen Yagman
**STEPHEN YAGMAN**